UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANDREW JOSEPH SMITH, | : |
|     Plaintiff, | : |
| | : |
| v. | :  C.A. No. 18-92JJM |
| | : |
| TERRYANN SMITH and | : |
| KIRSHENBAUM AND KIRSHENBAUM, | : |
|     Defendants. | : |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On February 26, 2018, Plaintiff Andrew Smith filed *pro se* a complaint (ECF No. 1) along with an application for leave to proceed *in forma pauperis* ("IFP") (ECF No. 2). The IFP motion has been referred to me pursuant to 28 U.S.C. § 636(b)(1). Because Plaintiff is currently an incarcerated prisoner serving a recently-imposed sentence for child pornography,[1] pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), codified at 28 U.S.C. § 1915(b), even if he is eligible for IFP status, he is still required to pay the statutory filing fee of $350 in increments based on the deposits and funds available in his prisoner trust fund account statement.[2] 28 U.S.C. § 1915(b)(1). Because his IFP application did not include a certified copy of the statement showing his transactions for the period (up to six months) preceding the filing of the action, the IFP motion cannot be considered unless and until the statement is received.

---

[1] This information is a matter of public record. State of Rhode Island Department of Corrections, Inmate Search, http://www.doc.ri.gov/inmate_search/search.php (last visited Mar. 6, 2018).

[2] A prisoner seeking to file IFP must pay as an initial filing fee the greater of twenty percent (20%) of the average monthly deposits to his account or the average monthly balance for the six months prior to the filing of his complaint. See 28 U.S.C. § 1915(b)(1). Subsequently, a prisoner must pay monthly twenty percent (20%) of the previous month's balance in his account. See 28 U.S.C. § 1915(b)(2). To enable the Court to perform the PLRA calculation, a prisoner must submit a copy of his prisoner trust fund account statement certified by an appropriate official of each prison at which he is or was confined showing the six-month period preceding the filing of the law suit. See 28 U.S.C. § 1915(a)(2).

However, the filing of the IFP motion renders this case subject to preliminary screening pursuant to 28 U.S.C. § 1915(e)(2)(B).  Having reviewed the complaint with the liberality required in any case with a *pro se* plaintiff, Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam), I recommend that it be summarily dismissed for lack of subject matter jurisdiction, for failing to state a claim on which relief may be granted, and because it is frivolous and malicious.

**I.      Background**

Plaintiff's complaint asks this Court to relitigate his divorce, vacating the dissolution of the marriage based on what he claims is his sacred right as a Roman Catholic to force his former spouse to remain in the marriage and to bar her from changing her name, a right that he claims is derived from the First Amendment of the United States Constitution.  He also asks this Court to do over various rulings of the Rhode Island Family Court pertaining to the division of marital property, including to award him shared custody of Lilly, a golden retriever.  He asserts that the Family Court denied his request to have his divorce decided by a jury of his peers, which he claims is his right under the Seventh Amendment.  According to the public record, the divorce proceeding is ongoing, now pending in the Rhode Island Supreme Court.[3]  See Smith v. Smith, SU-2018-0032-A (R.I. Sup. Ct. filed Jan. 24, 2018).

The instant complaint names as defendants Plaintiff's former spouse, as well as the law firm that represented her in the divorce proceeding.  As to the latter, Plaintiff challenges the firm's holding of an escrow account pursuant to a Family Court order and asks the Court to order the law firm to pay him punitive damages of $5 million.  The complaint expresses confidence that the remedies sought will be an "easy decision" for this Court as "many members of the court

---

[3] This information is publically available.  Rhode Island Judiciary Public Portal, https://publicportal.courts.ri.gov/PublicPortal/Home/WorkspaceMode?p=0 (last visited Mar. 6, 2018).

are Christians and Roman Catholics," ECF No. 1 at 5 (by contrast with the law firm, which is "Jewish"), particularly in light of Plaintiff's claim that the law firm has "commit[ed] a religious hat [sic] crime upon this plaintiff, with intentionally violating mine and all Christian's rights to worship the only true God and Savior Jesus Christ." ECF No. 1 at 8.  Finally, the complaint contains inappropriate and superfluous personal details, including health care information, about an individual who is not named as a party.  See, e.g., ECF No. 1 at 2-3.

## II.     Standard of Review

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2) and 1915A is the same used when ruling on a Rule 12(b)(6) motion to dismiss. Hodge v. Murphy, 808 F. Supp. 2d 405, 408 (D.R.I. 2011).  To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Section 1915A also requires dismissal if the Court finds that the pleading is frivolous or malicious.  28 U.S.C. § 1915A(b)(1).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  The requirement of a statement of the grounds for invoking the court's jurisdiction is critical to the viability of a complaint because federal district courts are limited to exercising jurisdiction over cases that arise "under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and over cases between citizens of different states where the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a).  If based on diversity of citizenship, a viable complaint must also establish both the requisite amount in controversy and that diversity is complete, that is, the citizenship of each plaintiff must be shown to be diverse from that of each defendant.  Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978).

**III.    Law and Analysis**

The first and most prominent of the flaws that doom Plaintiff's complaint at screening is that this Court lacks subject matter jurisdiction because the pleading falls squarely into the domestic relations exception to federal jurisdiction.  See Behroozi v. Behroozi, C.A. No. 15-536S, 2016 WL 8461181, at *2 (D.R.I. Nov. 22, 2016), adopted, 2017 WL 933059 (D.R.I. Mar. 8, 2017).  As the First Circuit recently held in Irish v. Irish, the domestic relations exception is "in line with the traditional reluctance of federal courts to sanction federal interference with matters thought to be distinctively local," and is based on the long-settled notion that it "is certain that the Constitution . . . confers no power whatever upon the government of the United States to regulate marriage in the States or its dissolution."  842 F.3d 736, 740 (1st Cir. 2016) (citing Andrews v. Andrews, 188 U.S. 14, 32 (1903)).  Based on these principles, the domestic relations exception divests federal courts of jurisdiction over "[cases implicating] domestic relations issues" that would otherwise meet the requirements for federal diversity jurisdiction under 28 U.S.C. § 1332(a).[4]  Marshall v. Marshall, 547 U.S. 293, 307 (2006) (quoting Ankenbrandt v. Richards, 504 U.S. 689, 701 (1992)).  When, as here, the claim at issue seeks "to obtain, alter or end a divorce . . . decree," and is based on "the allocation of property incident to a divorce," the case falls into the exception and must be dismissed for want of subject matter jurisdiction.  Irish, 842 F.3d at 741.

Plaintiff's invocation of the First and Seventh Amendments does not alter the result.  Irish teaches that the Court must look past the labels appended to the claim by the litigant to determine the substance of what is in issue.  Irish, 842 F.3d at 742 ("We look to the reality of

---

[4] In this instance, there is no suggestion that the pleading would otherwise meet the citizenship requirement necessary to trigger the Court's diversity jurisdiction, 28 U.S.C. § 1332(a), which is yet another reason why it should be dismissed at screening.

what is going on. The domestic relations exception 'governs claims . . . even where they are cloaked in the 'trappings' of another type of claim.'"). Here, Plaintiff's claim is pellucid – he wants to relitigate his divorce and all of the Family Court decisions made in the course of the divorce proceeding that pertain to marital property and the payment of attorney's fees, this time in a court that he believes is willing to impose religious doctrine in lieu of civil law to the issues presented and is willing to afford him a jury trial on those issues. In such circumstances, the court must look past the invocation of "various provisions of the United States Constitution," and focus instead on "the fundamental relief sought." Cole v. North Carolina, C.A. No. 15-310 ML, 2015 WL 5023772, at *4 (D.R.I. Aug. 25, 2015). Viewed from the perspective of the remedies Plaintiff seeks, despite his purported assertion of constitutional claims, the outcome remains the same: this Court lacks subject matter jurisdiction to preside over divorce proceedings. Accordingly, the domestic relations exception requires dismissal of the action.

While the domestic relations exception is dispositive of the Court's screening obligation, with important constitutional rights ostensibly in issue, the Court should pause and step away from the gravamen of the pleading, and relief it seeks, to examine whether the constitutional claims somehow have merit. Viewed from this perspective, the complaint fares no better. That is, when the constitutional claims are analyzed in light of the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, it is clear that they should be dismissed for failure to state a claim, independently of the domestic relations exception.

For starters, Plaintiff's allegation that he is the victim of a First Amendment violation utterly fails to state a claim because he has turned the First Amendment on its head. The Establishment Clause of the First Amendment <u>bars</u> both the State and the United States from imposing religious doctrine (such as Plaintiff's professed belief that marriage is for eternity) on

5

the civil institution of marriage.  See Obergefell v. Hodges, 135 S.Ct. 2584, 2607 (2015) (acknowledging that religions may "continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned," but holding that constitution "does not permit the State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex"); Sch. Dist. of Abington Tp., Pa. v. Schempp, 374 U.S. 203, 234 (1963) (Brennan, J, concurring) ("what Madison, Jefferson and others fought to end, was the extension of civil government's support to religion in a manner which made the two in some degree interdependent, and thus threatened the freedom of each").  And while the Free Exercise Clause of the First Amendment certainly protects Plaintiff's right to be true to his religious beliefs, for example, by adhering to his marriage vows by sustained celibacy, never to marry again, it does not afford him the right to deploy the power of the State or the United States to force his former spouse to abide by those religious precepts.  See Coleman v. Monson, C/A No. 5:10-0535-MBS-PJG, 2010 WL 4038790, at *2 (D.S.C. Mar. 30, 2010), adopted, 2010 WL 4038606 (D.S.C. Oct. 14, 2010) (federal court "has no jurisdiction over disputes concerning ecclesiastical law, rabbinical law, canon law, or religious disputes").

Plaintiff's claim that the Family Court's refusal to try his divorce to a jury amounted to a denial of his Seventh Amendment right to trial by jury is equally unavailing.  The Seventh Amendment preserves the right to trial by jury only "in suits at common law."  As explained by Mr. Justice Story in 1830, the right to trial by jury in civil matters is limited to causes of action that were recognized at "common law," Parsons v. Bedford, 28 U.S. 433, 446-47 (1830), and, "[h]istorically divorce was not a branch of the common law."  Bernatavicius v. Bernatavicius, 156 N.E. 685, 686 (Mass. 1927).  Consistently, the Rhode Island Supreme Court has held that there is no right of trial by jury in divorce proceedings in the Rhode Island Family Court.  Cok v.

Cok, 533 A.2d 534, 535 (R.I. 1987) (right to trial by jury has never been afforded in divorce proceedings). Like his First Amendment allegations, Plaintiff's claim based on the Seventh Amendment should not survive screening because it fails to state a claim.

Yet another reason why this case must not survive screening is that it is improper for this Court to interfere with judicial proceedings underway in the state courts of Rhode Island. See Younger v. Harris, 401 U.S. 37 (1971). Plaintiff's divorce proceeding remains pending on appeal.[5] The Younger abstention doctrine dictates a "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). Troublingly, this is the second time Plaintiff has filed a federal case asking this Court to interfere with his divorce. The first effort was dismissed based on Younger. Smith v. Rhode Island, C.A. No. 17-480JJM, ECF No. 3 (D.R.I. Oct. 24, 2017). Consistent with the recent decision of this Court, I recommend that Plaintiff's new attempt to interfere in the ongoing state divorce proceeding be dismissed as frivolous.

Finally, the Court turns to the complaint's pervasive "redundant, immaterial, impertinent, [and] scandalous matter," Fed. R. Civ. P. 12(f), starting with its troubling theme of anti-Semitism. Pleadings so tainted are routinely dismissed at screening. See, e.g., Uzamere v. United States, No. CA 13-505 S, 2013 WL 5781216, at *17 (D.R.I. Oct. 25, 2013), aff'd, No. 13-2454 (1st Cir. Apr. 11, 2014) (anti-Semitic vitriol is one basis for court's dismissal of complaint at screening); Pureegiin v. Bd. of Immigration Appeals, 1:07cv100(TSE/TRJ), 2007 WL 6097214, at *l-2 (E.D. Va. Mar. 12, 2007) (malicious complaint dismissed based in part on anti-Semitic invective). Relatedly, Plaintiff's seemingly gratuitous inclusion of personal and health

---

[5] See note 3, *supra.*

care information rises to a level that justifies the complaint's striking, pursuant to Fed. R. Civ. P. 12(f) (court may strike any redundant, immaterial, impertinent or scandalous matter). Based on the ubiquitous nature of these matters in this pleading, I recommend that the complaint be dismissed as malicious.[6]

**IV.     Conclusion**

Based on the foregoing, I recommend that the complaint be summarily dismissed because the Court lacks subject matter jurisdiction, because the complaint fails to state a claim and because it is frivolous and malicious. I further recommend that the IFP motion be denied as moot.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 6, 2018

---

[6] Plaintiff is cautioned that, should the District Court adopt my recommendation and dismiss this complaint for failure to state a claim and because it is malicious and frivolous, it will be a strike under the "three strikes" provision of the PLRA. The three strikes provision bars from IFP status any prisoner who has brought three or more cases that were dismissed as frivolous or malicious, or for failure to state a claim. 28 U.S.C. § 1915(g); Winston v. Auger, C.A. No. 15-204S, 2015 WL 6696575, at *3 (D.R.I. Nov. 3, 2015) (citing Coleman v. Tollefson, 135 S.Ct. 1759, 1763 (2015)).